In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1764

Industrial Electronics Corp. of Wisconsin,

Plaintiff-Appellee,

v.

iPower Distribution Group, Inc.,

Defendant-Appellant.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98 C 998--J.P. Stadtmueller, Chief Judge.


Argued February 23, 2000--Decided May 31, 2000


Before Flaum, Kanne and Diane P. Wood,
Circuit Judges.

Kanne, Circuit Judge.  A failed attempt
by several small Wisconsin companies to
develop an integrated marketing and
distribution consortium with the help of
an Ohio software supplier ended with
claims of fraud against the Ohio company.
Embedded in a fairly complex business
arrangement lies an arbitration clause
that the Ohio company, iPower
Distribution Group, Inc. ("iPower"),
believed entitled it to arbitration
rather than litigation. The district
court disagreed and refused to stay the
action pending arbitration. Before the
case could continue, iPower appealed. We
affirm the district court's decision,
although on different grounds than the
district court.


I.  History

The complaint in this case concerns the
relationships among four corporate
entities bound together in various ways
by two related agreements. The deal began
with defendant iPower, a company that
makes a special kind of software for

industrial supply dealers. iPower's software allows groups of dealers to combine together into an integrated, one-stop-shopping network so that other business customers may buy products from many dealers with a single order. To market its software, iPower approaches groups of dealers in a particular region and suggests that they form an association, usually a limited partnership or some similar legal entity. That association then enters into a franchise agreement with iPower that allows the association to purchase, install and use the iPower software. Customers place their orders with and make payments to the franchisee association when they want to buy a particular product from an individual dealer.

In May 1995, iPower approached several unaffiliated equipment dealers in Southern Wisconsin (the "dealers"), and pitched the idea to them of becoming a franchisee and buying the software. One of the dealers was plaintiff Industrial Electronics Corp. of Wisconsin ("Industrial Electronics"). The dealers liked the proposal and agreed among themselves to form an association to become a franchisee (the "association agreement"), with each company owning equal shares. That summer, the dealers formed iPower Distribution Group, Southern Wisconsin, LLC, (the "association"), a limited liability corporation organized under the laws of Wisconsin. The association was formed on August 10, 1995, and consisted of eight dealer-members as "Full Members."

A year later, in September 1996, iPower and the association entered into a franchise agreement (the "franchise agreement"). The franchise agreement detailed the entire relationship between the association and iPower and included an arbitration clause that stated in part:

The parties wish to provide for an arbitration procedure in order to avoid the excessive costs of litigation. Any monetary claim arising out of or relating to this Agreement, or any breach thereof, excluding any claim relating to the confidential information or the Marks, shall be submitted to arbitration in Cuyahoga County, Ohio, in accordance with

the rules of the American Arbitration Association and judgment upon the award may be entered in any court having jurisdiction thereof and shall be final, binding and unappealable. . . .

Two years later, Industrial Electronics filed suit in Wisconsin state court, alleging that iPower had made material misrepresentations regarding its product to induce Industrial Electronics to join the association. Industrial Electronics claimed that despite iPower's assertions to the contrary, the software was not functional or appropriate for the size of enterprise at issue. According to the complaint, iPower's alleged misrepresentations regarding its product began in May 1995 when Industrial Electronics obtained an offering circular, possibly from a third party, and continued through August 1995 when the association was formed. Industrial Electronics claimed that because iPower's software did not work, the association never made any sales and that because of iPower's misrepresentations, Industrial Electronics forewent participation in other dealer consortiums. iPower removed the case to federal district court, which had jurisdiction based on diversity of citizenship, and moved for a stay pending arbitration of the agreement pursuant to sec. 3 of the Federal Arbitration Act, 9 U.S.C. sec. 1 et seq. The district court denied the motion to stay pending arbitration, and iPower appealed pursuant to 9 U.S.C. sec. 16(a)(1)(A).

II.  Analysis

The district court held that it would defeat the purpose of Wisconsin's limited liability company statute, Wis. Stat. sec. 183.0102 et seq., to allow LLCs to bind their members or subject them to liability by their agreements with third parties. Therefore the court held that members of LLCs cannot be bound by contracts entered into between the LLC and third parties, and the arbitration clause between the association and iPower had no effect against Industrial Electronics./1

iPower does not dispute that the association could not impose an

obligation on one of its members, but instead maintains that the district court misapprehended the nature of Industrial Electronics' claim. In iPower's view, Industrial Electronics stated its claim as a third-party beneficiary of the franchise agreement, in which case, the limited liability statute would not apply. Because Industrial Electronics asserted a right under the franchise agreement as a third-party beneficiary, the terms of the agreement, including the arbitration provision, would control. Furthermore, Industrial Electronics' claim amounts to an allegation of fraud in the inducement of the franchise agreement, and such claims have been held to be covered by arbitration provisions within the fraudulently induced agreement. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967).

If Industrial Electronics asserted rights created by the franchise agreement, we would agree with iPower that the arbitration provision would govern. The association agreement created a new legal entity, much as a corporate charter does, whose investors were the eight dealers. Those eight dealers stood as shareholders in a corporation and could not sue a third party individually or on behalf of the corporation, except as allowed by the Wisconsin statute. See Wis. Stat. sec. 183.0305; see also Rose v. Schantz, 201 N.W.2d 593, 597 (Wis. 1972) (holding that action accruing to corporation cannot be brought by the members as individuals); Flynn v. Merrick, 881 F.2d 446, 449 (7th Cir. 1989) (same); Carney v. General Motors Corp., 23 F.3d 1154, 1157 (7th Cir. 1994) (holding that sole shareholder may not bring action in his own name to enforce a right that belonged to the corporation); Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1194 (7th Cir. 1985) (holding that under United States law, a stockholder of a corporation has no individual right against third parties for injuries to the corporation). Under these well established principles, Industrial Electronics cannot bring a suit to assert rights under the franchise agreement for injuries to the association or indirectly to the members as shareholders.

Yet that new legal entity entered into

a contract (the franchise agreement) with iPower, the purpose of which was to benefit certain specified parties. The applicable state law/2 would determine whether Industrial Electronics could assert the rights of a third party. See Grant Thornton v. Windsor House, Inc., 566 N.E.2d 1220, 1223 (Ohio 1991); Pappas v. Jack O.A. Nelson Agency, Inc., 260 N.W.2d 721, 725 (Wis. 1978). As a third-party beneficiary, Industrial Electronics also would be bound by the arbitration provision. See Barrett v. Picker Int'l, Inc., 589 N.E.2d 1372, 1375-76 (Ohio Ct. App. 1990) (holding that forum selection clause in contract bound third-party beneficiaries); City of Mequon v. Lake Estates Co., 190 N.W.2d 912, 916 (Wis. 1971) (holding that third-party beneficiaries take rights under contract subject to all terms and conditions of the contract); Winnebago Homes, Inc. v. Sheldon, 139 N.W.2d 606, 609 (Wis. 1966).

However, the injuries alleged by Industrial Electronics do not arise under or relate to the franchise agreement, and Industrial Electronics' status as a potential third-party beneficiary does not dispose of this case. Rather, Industrial Electronics claims as its injuries the payments it made to invest in the association, and it asserts these injuries separately from any injury to the association itself. In Paragraph 11, Industrial Electronics mentions that the association has made no sales under the franchise, but that is the sole mention of the association's injury in the complaint. Instead, Industrial Electronics focuses factually on the misrepresentations made directly to Industrial Electronics by iPower, claims as part of its injury the $31,000 it paid to the association and characterizes the legal wrong as a reckless or intentional misrepresentation designed to induce Industrial Electronics to join the association. Therefore, the pleading makes clear that Industrial Electronics' claim relates not to the franchise agreement but to the earlier association agreement, which does not contain an arbitration requirement.

Industrial Electronics contends that iPower fraudulently caused it to enter into the association agreement. Where fraud is alleged in the inducement of a

contract, the parties are bound to arbitrate in accordance with the contract. See Prima Paint, 388 U.S. at 404; Barron v. Tastee Freez Int'l, Inc., 482 F.Supp. 1213, 1216 (E.D. Wis. 1980). Yet here the fraud was not in the creation of the franchise agreement, but in the creation of an entirely separate contract. A dispute that arises under one agreement may be litigated notwithstanding a mandatory arbitration clause in a second agreement, even where the two agreements are closely intertwined. See Midwest Window Sys., Inc. v. Amcor Indus., Inc., 630 F.2d 535, 537 (7th Cir. 1980).

Midwest Window concerned a distributorship agreement between two companies that contained an arbitration provision for all disputes arising out of the contract. Id. at 535. A dispute later arose that the parties settled by reaching a second agreement that dictated new terms of delivery in exchange for the issuance of two promissory notes to secure payment by Midwest Window. Id. at 536. Another dispute then arose which landed the parties in court. This second dispute centered on fraud allegations concerning the notes, and the district court ordered the parties to arbitration. Id. at 537. We held that it was error to order arbitration for a dispute arising out of the notes agreement. Id. "Those fraud allegations are not arbitrable. They are not encompassed within the contract provision providing for arbitration of a dispute 'concerning the interpretation or application of any of the provisions' of the original agreement between the parties. The notes are outside that arbitration agreement." Id.

Industrial Electronics' claims do not require the interpretation of any term of the franchise agreement, nor are they properly considered to be claims of fraud in the inducement to enter that contract. Industrial Electronics was not a party to the franchise agreement and does not have standing directly to enforce its terms./3 Its complaint relates entirely to fraud in the inducement of Industrial Electronics to join the association by the August 1995 association agreement, to which the franchise agreement arbitration provision does not apply.

III. Conclusion

We conclude that the arbitration provision does not affect disputes arising out of the association agreement and Affirm the district court's decision to deny the stay.


/1 We agree with the district court that Wisconsin law prevents an LLC from binding its members or subjecting them to liability through contracts between the LLC and third parties. See Wis. Stat. sec. 183.0304. However, because we hold that Industrial Electronics may only assert claims under the association agreement or as a third-party beneficiary of the franchise agreement, the immunity conferred by the Wisconsin LLC does not resolve this case.

/2 We leave for the trial court to determine whether Ohio or Wisconsin law applies.

/3 Because we hold that Industrial Electronics pleaded a claim based entirely on the association agreement, we need not address whether they qualified as third-party beneficiaries of the franchise agreement and thereby could enforce or be bound by its terms.